IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>$19,985 in U.S. Currency,<br><br>　　　　　Defendant in Rem. | No. 3:22-CV-2836 |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America alleges this *in rem* complaint for forfeiture against $19,985 in U.S. currency ("Defendant Property"):

## NATURE OF THE ACTION

1.This is a forfeiture action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). The United States seeks to forfeit the Defendant Property because it is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. The Defendant Property is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(C), because it was property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952, a specified unlawful activity as defined in 18 U.S.C. §§ 1957(c)(7) and 1961(1).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), and in rem jurisdiction is proper under 28 U.S.C. § 1355(b).

3. Venue in this Court is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b), because acts or omissions giving rise to the forfeiture occurred in the Northern District of Texas and a substantial part of the events giving rise to the forfeiture occurred in the Northern District of Texas.

## PARTIES

4. The Plaintiff is the United States of America.

5. The Defendant Property is $19,985 in U.S. currency.

6. The Defendant Property was seized at DFW Airport, Texas, on July 6, 2022, from Kevin Lamont Ealy Jr. ("Ealy"), and is currently in the custody and control of the United States Marshals Service in the Northern District of Texas. Ealy, represented by Leslie Sammis, filed a claim to the Defendant Property in the Drug Enforcement Administration's administrative forfeiture proceeding against the Defendant Property.

7. Ealy was born in 1993 and lives in Dallas, Texas.

## FACTS

**Introduction**

8. The Controlled Substances Act ("CSA") places all substances which are in some manner regulated under federal law into one of five schedules. This placement is

based upon the substances' medical use, potential for abuse, and safety or dependence liability. Drugs on Schedules I and II of the CSA have a high potential for abuse.

9. Schedule I controlled substances include marijuana, and its main psychoactive compound, tetrahydrocannabinol ("THC").

10. Schedule II controlled substances include oxycodone (Percocet is a combination medication that contains oxycodone).

11. Schedule IV controlled substances include alprazolam (including the brand name drug Xanax).

12. In the United States, only those authorized by the Drug Enforcement Administration ("DEA") can distribute controlled substances. The DEA has not authorized Ealy to distribute any controlled substances.

13. The primary responsibility of the DEA's Dallas/Fort Worth Airport Interdiction HIDTA Group ("Interdiction Group") is to investigate and prevent the use of the DFW Airport and the airlines that service it from perpetrating or facilitating drug trafficking crimes including the transportation of illegal narcotics and the proceeds from the sale of such narcotics.

14. Those trafficking in illegal narcotics often hire couriers to transport narcotics and/or their proceeds. Air travel is one way that traffickers or their couriers accomplish their illegal purpose. Transporting cash obtained through narcotic sales via airplane allows drug traffickers to keep their ill-gotten gains "off the books" and outside

the banking system, which they may believe can make it more difficult for law enforcement to detect their criminal activities.

15. Investigators with the Interdiction Group are specially trained and learn by experience how to identify those who are using the federal aviation system to facilitate narcotic trafficking.

16. Interdiction Group officers know that California is a source state for marijuana and that narcotic traffickers and couriers of narcotic traffickers regularly transport cash proceeds obtained from narcotic sales back to that state. The Los Angeles region in California is a popular source for Marijuana, THC concentrates, and other illegal substances.

17. In addition to observing passengers, Interdiction Officers also look for suspicious checked luggage. Suspicious characteristics of luggage include hard-sided cases, lightness of weight for the size of the luggage especially when combined with multiple larger cases, locked bags, and luggage associated with passengers who have a "priority" status.

**Seizure of the Defendant Property from Ealy at DFW Airport**

18. On July 6, 2022, task force officers ("TFO") Eric LaCross, Mark Adams, and Phil Harris with the Interdiction Group identified suspicious pieces of luggage including grey and a salmon-colored, hard-case suitcases, both bearing Ealy's name. The luggage was preparing to be loaded on outgoing American Airlines flight 1235 to Los Angles California (LAX) from DFW Airport, Texas, Terminal A, Gate 16.

19. TFO Harris is a certified handler of Gizmo, a specially trained canine. Gizmo is a certified narcotics odor detection canine that is trained to detect illicit odors of marijuana, cocaine, methamphetamine, and heroin.

20. TFO Harris observed Gizmo give a positive alert for the presence of an odor of narcotics on or coming from Ealy's luggage.

21. Based on the canine sniff results, agents told American Airlines personnel at Gate A16 that they needed to speak with Ealy. The American Airlines personnel said they could get Ealy, who had already boarded the plane.

22. American Airlines personnel asked Ealy to deplane and bring his carry-on luggage. Ealy exited the plane without any luggage, but American Airlines personnel let TFOs know that they had seen Ealy board with a carryon.

23. After Ealy exited the plane, TFO LaCross contacted him on the jet bridge. TFO LaCross and TFO Adams identified themselves as law enforcement verbally and by showing Ealy their badges and identification.

24. TFO LaCross asked to see Ealy's boarding pass and identification. Ealy started walking back onto the plane and TFO LaCross asked where he was going. Ealy said his identification was on the plane. TFO LaCross asked Ealy why he had told American Airlines personnel that he did not have any carry-on luggage. Ealy said he had a small bag.

25. TFO Adams went with Ealy onto the plane to retrieve his bag, and they returned a short time later. Ealy showed TFOs his boarding pass, which showed that he

was travelling from Dallas Fort Worth to Los Angeles as a Priority First-Class passenger in boarding Group 1.

26. TFO LaCross asked if there was any reason a canine would alert to the odor of narcotics on his checked luggage. Ealy said he was not sure why but said it might be because his girlfriend smokes marijuana. Ealy said there was nothing inside of the luggage and he gave verbal consent to search them.

27. TFO Harris, who was outside next to the airplane on a ramp with Ealy's checked luggage, brought the luggage into the jet bridge area.

28. TFO LaCross asked Ealy about his travels to Los Angeles. Ealy said he was going to Los Angeles to record music for two to three days, but he did not have a return flight booked yet. Ealy said he was staying at an AirBnb. TFO LaCross asked to see the AirBnb booking, but Ealy claimed he could not provide it because someone else booked it.

29. TFO LaCross asked Ealy if he had anything illegal, or any large amounts of U.S. currency, in his carry-on backpack. Ealy said he did not, but said he had some money. When asked how much, Ealy said, "about $8,000."

30. Ealy consented to TFOs searching his backpack.

31. Throughout the inside of the backpack, TFO Adams found twelve rubber-banded bundles of U.S. currency. In the TFOs' experience, those involved in drug trafficking frequently package their drug proceeds in rubber-banded bundles. The

bundling was also consistent with how other narcotic traffickers interdicted at DFW Airport have packaged their drug proceeds for transport.

32. TFO LaCross asked again how much money was in the bag and Ealy now said, "$8,000 to $10,000." Ealy then said he was not exactly sure, but said he asked his cousin to give him $10,000 and she bundled it and gave it to him.

33. TFO Adams also found an Apple iPhone with a blue case inside the backpack.

34. Ealy told the TFOs that he was going to use the money for buying t-shirts in Los Angeles that he planned to resell. Ealy said t-shirts were cheaper in Los Angeles. He later said he could get t-shirts cheaper off Harry Hines (a shopping district in Dallas, Texas), but he did not like the quality as much.

35. TFO Adams also searched Ealy's checked suitcases and found nothing inside either piece. TFO Harris swabbed the grey, hard-case suitcase using a Mistral D4D drug identification kit, which returned a presumptive positive result for contact with cannabis.

36. In the TFOs' experience it would be unusual for the typical air travel passenger to have two large suitcases, packed with nothing, for a multi-day trip. In the TFOs' experience, drug traffickers often utilize excess luggage on short trips to transport narcotics or criminal proceeds.

37. TFOs placed the U.S. currency found in Ealy's backpack into a new brown paper bag and placed it to the side of the jet bridge. TFO Harris had Gizmo do an open-

air sniff of the area that included the brown paper bag. Gizmo alerted to the odor of narcotics emitting from the paper bag containing the U.S. currency.

38.	TFO LaCross asked Ealy about his employment, and Ealy said he was a rapper, and he worked at a smoke shop.

39.	Investigators checked the Texas Workforce Commission ("TWC") database to see if the TWC had any wage records for Ealy. The TWC is a government agency in Texas that provides unemployment benefits. In aid of that purpose, Texas requires employers to report to TWC wages paid to employees. TWC did not have any wage records for Ealy.

40.	TFOs seized the U.S. currency found in Ealy's backpack as property connected to drug trafficking. The seized currency totaled $19,985 and included 89 $100 dollar bills, 554 $20 dollar bills, and 1 $5 bill.

41.	In the TFOs' experience, possession of such a large amount of currency is not typical of legitimate airport travelers.

42.	TFOs told Ealy he was free to board the plane and continue his travels. However, Ealy said he did not wish to continue his travels, and he walked away from the plane and off the jet bridge.

**Discovery of Data Related to Drug Trafficking on Ealy's Phone**

43.	Investigators seized the Apple iPhone with a blue case found inside Ealy's backpack based on probable cause to believe it contained evidence of drug trafficking and related crimes.

44. Pursuant to a Dallas County Municipal Court search warrant authorized on July 7, 2022, Officer Adam Vanderveer with the Irving Police Department in Irving, Texas, extracted the data in Ealy's phone. TFO LaCross then searched and forensically examined the date. Analysis of the phone revealed numerous text messages and other media related to trafficking in controlled substances.

45. Many of the messages on Ealy's phone used code or slang words. Based on training and experience, investigators know that those involved in drug trafficking frequently communicate in slang or code words over electronic devices such as through phone messaging apps and in text messages when communicating about buying and selling narcotics.

46. The messages TFO LaCross observed on Ealy's phone frequently used code words and slang terms that refer to controlled substances and Ealy's trafficking activity including "percs," "10s," or "yerks" (referring to Percocet/Oxycodone), Xan (referring to Xanax), Herb (referring to marijuana), and ticcets (referring to the price of marijuana). Those dealing in marijuana often traffic various strains of marijuana each with their own characteristics and innocuous names such as "Elmer's Glue." Messages on Ealy's phone identified that he was dealing in various strains of marijuana.

47. A sampling of the many messages on the phone indicating Ealy's involvement with trafficking include:

| Instagram Messages | | | |
|---|---|---|---|
| Direction | Date | Time | Message |
| Incoming | 8/18/2021 | 0450 | How many percs can j get for a hundo [referring to $100] |

| Direction | Date | Time | Message |
|---|---|---|---|
| Outgoing | 8/24/2021 | 0120 | Got them 10s in |
| Incoming | 8/24/2021 | 0213 | Yellow or pink [referring to yellow or pink Oxycodone tablets] |
| Incoming | 11/9/2021 | 0134 | U around the north ? |
| Outgoing | 11/9/2021 | 0323 | I'm in downtown |
| Incoming | 11/9/2021 | 0432 | U have good xan I could cop for 40$? |
| Incoming | 11/9/2021 | 0432 | Or shit I got 50 on it |
| Incoming | 1/1/2022 | 0600 | Yo dawg I'm tryna get like 50 xan and yerks if u have any lmk old |
| Incoming | 1/1/2022 | 0600 | Plsss** |

| Text Messages – Area Code 714 – Number Ending 1417 ||||
|---|---|---|---|
| Direction | Date | Time | Message |
| Incoming | 3/3/2022 | 1914 | Latto 44 [referring to a marijuana strain] [message included a photo of marijuana] |
| Outgoing | 3/3/2022 | 1927 | What's the ticcets |
| Incoming | 3/3/2022 | 1930 | Ranging from 1100-1400 [referring to the price, likely per pound, of marijuana] all nice af |
| Incoming | 3/3/2022 | 1951 | Runts og 1200 Ice pop 1400 Gummy bear 1250 Elmer glue 1300 Italian ice 1550 zaza White buba 1150 Latto 44 1300 Dosi 1100 [referring to the price, likely per pound, of various strains of marijuana] [an attachment to this message indicated a total price of 29,960] |
| Incoming | 3/3/2022 | 2243 | Brandon [last name redacted] Cerritos ca 90703 [street number and street redacted] |
| Incoming | 3/3/2022 | 2243 | That cuzz address you can send it there |
| Incoming | 3/4/2022 | 1732 | Let me know when you send it I got everything ready |
| Outgoing | 3/4/2022 | 2051 | Going up to fedex when I get out of the shower |

| Text Messages – Area Code 214 – Number Ending 4476 ||||
|---|---|---|---|
| Direction | Date | Time | Message |
| Incoming | 5/29/2022 | 2001 | Wuts up kj, this Bobby, Bubba, Quick, stefs bro |
| Outgoing | 5/29/2022 | 2006 | Lmaoooooo Wazzam |
| Incoming | 5/29/2022 | 2011 | Chillin, Stef told me 2 hit u up |
| Incoming | 5/31/2022 | 1831 | Hey thanks man 4 the herb |

| | | | |
|---|---|---|---|
| Outgoing | 5/31/2022 | 1936 | No problem bro happy bday |

48. Area code 714 covers an area in Orange County, California. Area code 214 covers an area in Dallas, Texas.

49. Many photos on the phone depict Ealy's involvement with drug trafficking including the below photo of Ealy cradling what, in the training and experience of investigators, appears to be vacuumed-sealed marijuana packaged for sale, and which metadata indicated was taken on May 28, 2022, in Dallas, Texas:



50. Further analysis of the data on Ealy's phone remains pending.

**Ealy's Criminal History Involving Controlled Substances**

51.     On November 15, 2018, Ealy was indicted in the 199th District Court in Collin County, Texas, on a charge of Manufacture/Delivery of a Controlled Substance in Penalty Group 1, a first-degree felony, in *The State of Texas vs. Kevin Lamont Ealy*, case number 199-84056-2018.  The offense occurred on or about May 12, 2018.  On April 11, 2019, Ealy was convicted on the charge, given a suspended sentence of ten years custody in the Texas Department of Criminal Justice, and placed on probation for six years.

52.     On January 21, 2020, Ealy was indicted in the 282nd District Court in Dallas County, Texas for Possession of a Controlled Substance Penalty Group 1-Cocaine, a first-degree felony, in *The State of Texas vs. Kevin Lamont Ealy Jr*, case number F-1825461. The offense occurred on or about September 26, 2018.  On May 17, 2021, Ealy pleaded guilty, and the Court entered an Order of Deferred Adjudication with three years of community supervision.

**Prior DFW Airport Seizure of Currency from Ealy**

53.     A prior similar seizure of currency at DFW Airport from a checked bag belonging to Ealy shows Ealy's knowledge, intent, and absence of mistake for the July 6, 2022 seizure.  On April 5, 2022, Judge Ada Brown entered an order of default against Ealy and a final judgment forfeiting $14,939 to the United States in *United States v. $14,939 in U.S. Currency*, No. 3:22-CV-065-E (Northern District of Texas).  Ealy was notified of this forfeiture proceeding but he did not file a claim or otherwise appear to

contest the forfeiture. Ealy was also contacted by the U.S. Attorney's Office and requested to provide documentation Ealy promised to provide regarding the source of the funds, but Ealy did not provide such documentation. According to the complaint in that case, on August 10, 2021, task force officers with Homeland Security Investigations identified two pieces of hard-case, checked luggage belonging to Ealy and bound for Los Angeles, California (LAX) that contained $14,939. A narcotic-sniffing canine detected the odor of narcotics on the luggage, which the officers themselves could smell. In one piece of the checked luggage, officers only found "a white t-shirt with green leafy flakes on it, a torn piece of plastic that appeared to be part of a plastic bag that is commonly used to package illegal narcotics, and a dryer sheet." In the other suitcase, officers found a black t-shirt, a pair of flip flop sandals, and a pair of red basketball shorts that contained the $14,939 in its pockets. A test of the currency using a D4D Aerosol Mobile Detection Kit showed a positive result for contact with cannabis.

### FIRST CAUSE OF ACTION
### 21 U.S.C. § 881(a)(6)
### (forfeiture of property related to drug trafficking)

54. The United States reasserts all allegations previously made.

55. Under 21 U.S.C. § 881(a)(6), "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities

used or intended to be used to facilitate any violation of" 21 U.S.C. § 801 et seq. are subject to forfeiture.

56. Under 21 U.S.C. § 841(a), it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." An attempt or conspiracy to do the same is also prohibited by 21 U.S.C. § 846.

57. As set forth above, the Defendant Property is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. This property is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CAUSE OF ACTION
## 18 U.S.C. § 981(a)(1)(C)
### (forfeiture related to violation of the Travel Act)

58. The United States reasserts all allegations previously made.

59. Under 18 U.S.C. § 981(a)(l)(C), any property which constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," or a conspiracy to commit such offense, is subject to forfeiture to the United States.

60. Under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), interstate travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 is a specified unlawful activity.

61.     18 U.S.C. § 1952(a) prohibits, inter alia, any individual who uses "any facility in interstate or foreign commerce,":

> with the intent to –
>
> (1) distribute the proceeds of any unlawful activity; or [ ]
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity"

from thereafter performing or attempting to perform the conduct described in subparagraphs (1) and (3) above.

62.     18 U.S.C. § 1952(b) specifically includes within the definition of "unlawful activity" "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)."

63.     As set forth above, the Defendant Property is property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952.  This property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully asserts that the Defendant Property is forfeitable to the United States under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

The United States further requests:

A.      That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b)(ii), the Clerk of the

    Court issue a Summons and Warrant of Arrest *in Rem* as to the Defendant Property.

B.  That Notice of this action be given to all persons known or thought to have an interest in or right against the Defendant Property;

C.  That a Judgment of Forfeiture be decreed against the Defendant Property forfeiting all right, title, and interest in it to the United States;

D.  That upon the issuance of a Judgment of Forfeiture, the United States Marshals Service or its delegate be able to dispose of the Defendant Property according to law; and

E.  That the United States receive its costs of court and all further relief to which it is entitled.

DATED this 19th day of December, 2022.

            LEIGHA SIMONTON
            UNITED STATES ATTORNEY


            */s/ Travis K. Elder*
            Travis K. Elder
            Assistant United States Attorney
            Utah Bar No. 11987
            1100 Commerce Street, Third Floor
            Dallas, Texas 75242-1699
            ☎(214) 659-8600 | 🖷(214) 659-8805
            ✉ travis.elder@usdoj.gov

            ATTORNEY FOR PLAINTIFF

## VERIFICATION

I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"). As a TFO with the DEA, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal laws.

I have read the contents of the foregoing Complaint for Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements contained therein are true and correct to the best of my knowledge and belief.

Executed on this 19th day of December, 2022.

_____
Eric J. LaCross, TFO
Drug Enforcement Administration